| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 1:04-CR-131(3) |
| § | |
| ORLANDER CRAZE JOHNSON § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Orlander Craze Johnson's ("Johnson") *Pro Se* Motion for Early Termination of Supervised Release (#198), wherein Johnson seeks early termination of his four-year term of supervised release. Johnson's United States Probation and Pretril Services ("Probation") Officer in the Eastern District of Texas prepared a report and recommends that the court deny the motion, allowing Johnson to continue on supervision as previously ordered. The Government is also opposed to Johnson's request for early termination. Having considered the motion, Probation's report, the Government's position, the record, and the applicable law, the court is of the opinion that Johnson's motion should be denied.

I.   Background

On September 1, 2004, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a single count Indictment against Johnson and two co-defendants, charging him in Count One with Conspiracy to Possess with Intent to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 846. Following a two-day trial, the jury returned a verdict finding him guilty of the offense charged in Count One of the Indictment on April 8, 2005. On August 24, 2005, United States District Judge Ron Clark sentenced Johnson to a term of 360 months' imprisonment, followed by a five-year term of supervised release. On June 25, 2019, his sentence was reduced to 262 months' imprisonment, followed by a four-year term of supervised

release. Johnson began his term of supervised release in the Eastern District of Texas on October 14, 2022, which is projected to expire on October 13, 2026.

In his motion, Johnson, age 48, asks the court to terminate his supervision at this time, having served over half of his four-year term of supervised release. He asserts that he has fully complied with all the requirements and conditions of supervision set by the court. Johnson claims that since his release, he has made every effort to reintegrate positively into society, follow all the conditions of his supervised release, and contribute constructively to his community. He states that he has maintained employment with the PSC Group for the last two years as a locomotive engineer and has been employed throughout his period of supervision. Johnson also contends that he is trying to get into CDL school. He alleges that he has helped out at his church's Impact Ministry by working at a charity event for St. Jude Children's Hospital and speaking with the youth about living life and how the choices we make affect not only ourselves. He adds that he lives with his wife and children and that they are buying a house. Johnson claims that early termination of his supervised release would allow him greater flexibility in working with his current employer by traveling to help with start-up sites. He also expresses a desire to becoming employed by BNSF (Burlington Northern Santa Fe) or to drive over-the-road as a truck driver, with his main goal being to own his own company. He adds, "I'll be able to travel and take cruise with my family as well." He closes by saying that he is fully prepared to continue upholding the values he has embraced during his period of supervision.

II.     Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering the factors set

forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir. 2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018). "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *United States v. Lynn*, No. S90-

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022); *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with

the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision). Nonetheless, "'generally, early termination of supervised release under

5

§ 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *Seymore*, 2023 WL 3976200, at *1 ("[E]arly termination is usually granted only in cases involving changed circumstances, such as exceptionally good behavior." (quoting *Smith*, 2014 WL 68796, at *1)).

According to Johnson's Presentence Report ("PSR"), prepared on May 24, 2005, his offense of conviction entails his participation in a conspiracy to possession with intent to distribute 50 grams or more of cocaine base in which he served as the supplier of cocaine base. On August 18, 2004, Co-defendant Holland, arrived at a car wash in Beaumont, Texas, the site of an impending drug transaction with an undercover officer ("UC"). Holland directed the UC to park in a stall at the carwash and stated that the supplier would park in another stall. Holland spoke with the UC by telephone again and advised that he and the supplier were waiting for him at the car wash and that they had the cocaine base. Holland added that he would park in a stall and would be in a Jaguar. Agents observed both a Jaguar and a Pontiac arrive at the car wash and park in adjacent stalls. When the arrest team converged on the car wash, Co-defendant Hayes, the front seat passenger in the Pontiac, exited the car and ran while carrying a plastic bag which he then threw down. The UC recovered the bag and found it held five plastic baggies that appeared to have contained 12 cookies of cocaine base which had broken when the bag was thrown. Johnson, the driver of the Pontiac, was detained and advised agents that his nickname was "Crez." Johnson was identified as the supplier of the cocaine base recovered at the scene, and a laboratory analysis revealed that it weighed 131.4 grams.

Subsequently, on September 30, 2004, while Johnson was on pretrial release, he met with a confidential source ("CS") at a hotel in Beaumont. The CS, who was working with narcotics officers, had called Johnson earlier and requested $60 worth of cocaine base. When Johnson arrived at the hotel, he knocked on the CS's door and gave the CS one rock of cocaine base in exchange for $60. This transaction was captured on video and audio recording. A laboratory analysis determined that the cocaine base weighed .5 gram. At trial, Johnson admitted to the jury that he was the person shown on the recording selling the cocaine base. He testified, however, that this was the only time he had sold drugs since his release from state jail, essentially denying the 131.4 gram cocaine base transaction of which he was ultimately convicted. As a result of this incident, he did not receive a reduction in his offense level for acceptance of responsibility.

Johnson's PSR reveals that he has a significant criminal history, which includes prior convictions for burglary of a vehicle (3x), unauthorized use of a motor vehicle, failure to identify, aggravated assault with serious bodily injury, delivery of a controlled substance (cocaine), and possession of marijuana. He failed to comply with previous terms of pretrial release, probation, and parole. Johnson also has a history of substance abuse beginning at age 15 which includes the daily use of marijuana.

In this situation, the court finds that Johnson's post-release conduct does not warrant early termination of his supervised release. Although Johnson maintains that he has fully complied with his conditions of release to date, he identifies no new or exceptional circumstances or needs. He states that he has maintained steady employment since his release and has worked for the same company for the past two years. Although Johnson intimates that his employment opportunities would improve if his supervised release were terminated early, he outlines no definite plans, just

aspirations—seeking employment with BNSF, working as an over-the-road truck driver, owning his own company, and taking a cruise with his family. With regard to his current employment, he does not indicate whether he has sought permission to travel from his probation officer in order to help with start-up sites.

Courts have often denied requests for early termination of supervised release based on a defendant's desire to travel for business purposes or to visit family. *See United States v. Alber*, No. 14-491(SRC), 2022 WL 1683710, at *3-4 (D.N.J. May 25, 2022) (travel for job training and family needs); *Santoro*, 2022 WL 37471, at *3 (travel out-of-state to spend time with family); *United States v. Tinsley*, No. 12-263, 2020 WL 1472428, at *3 (W.D. Pa. Mar. 26, 2020) (travel for "business opportunities"); *United States v. Gonzalez*, No. 94-cr-0134 (JSR), 2015 WL 4940607, at *1 (S.D.N.Y. Aug. 3, 2015) (travel for out-of-state employment training programs); *United States v. Gardner*, No. 03-CR-194, 2012 WL 4864997, at *1 (E.D. Wis. Oct. 12, 2012) (travel out-of-state to work as a promoter and become a professional boxer). A defendant's failure to provide concrete information "demonstrating lost potential business opportunities due to his travel restrictions" typically results in denial of his request for early termination of supervised release, particularly where Probation already permits domestic travel with prior approval. *See United States v. Olivieri*, 72 F. Supp. 3d 401, 403-04 (S.D.N.Y. 2014) (travel outside the district for employment purposes, where Probation had previously granted every domestic travel request the defendant submitted); *see also United States v. Coleman*, No. 15-543, 2021 WL 4940979, at *3 (E.D. Pa. Oct. 22, 2021) (travel for both business and charitable work, where the defendant failed to provide "specific examples" of instances where he was "denied permission to travel . . . for purposes that are legitimately related to his professional or charitable endeavors"); *United*

*States v. Black*, No. 10-CR-303-A, 2013 WL 2527371, at *3 (W.D.N.Y. June 10, 2013) (travel for business reasons, where the defendant "report[ed] no specific instance when the travel-approval process has had a concrete negative effect on his business").

Courts have similarly denied requests for early termination of supervised release where a defendant claims that early termination will improve his employment prospects without providing concrete support for this contention. *See United States v. Lagone*, No. 10-CR-818 (JFB), 2017 WL 606016, at *4 (E.D.N.Y. Feb. 15, 2017) (denying early termination in part because the defendant "merely generally contended that early termination would bolster his job prospects" and did not provide more detailed information); *Gonzalez*, 2015 WL 4940607, at *1-2 (refusing to grant early termination where the defendant failed to "establish[ ] that the terms of his supervised release pose[d] any hazard to his employment" and did not "explain[ ] how the terms of his supervised release [had] 'even an intangible impact' on his employment" (quoting *Black*, 2013 WL 2527371, at *3)); *Olivieri*, 72 F. Supp. 3d at 403-04 (determining that the defendant's circumstances did not warrant early termination in part because he "advanced no basis for his contention that 'the restrictions and general weight of supervised release' impede[d] his employment"); *United States v. Ogele*, No. CR 06-546 PJH, 2012 WL 6035537, at *2 (N.D. Cal. Dec. 4, 2012) (refusing to grant early termination in part because the defendant "offer[ed] no details of prospective business opportunities" and failed to "explain why fulfilling his term of supervised release would inhibit his ability to make a reasonable living"). Here, Johnson fails to explain how the conditions of his supervised release limit his employment opportunities in a significant manner. He does not clarify how being on supervised release keeps him from furthering his career or achieving additional goals, interferes with his family responsibilities, or

9

prevents him from engaging in sports, entertainment, or volunteer activities. Under the circumstances, the court finds the current conditions of Johnson's supervised release are not onerous and remain appropriate in view of his offense of conviction involving his serving as a supplier of cocaine base for a drug-trafficking conspiracy, his prior acts of violence and drug offenses, his failure to comply with previous conditions of release, as well as his history of substance abuse.

At this time, Johnson has served over half of his four-year term of supervised release. While Johnson's achievements to date should be commended, continuing him on supervision will provide him the best opportunity for success in reentry in view of his prior involvement in crimes involving drug distribution and acts of violence. Requiring Johnson to complete his entire, four-year term of supervised release safeguards against the reoccurrence of criminal activity and drug use, while imposing only a minimal burden on Johnson. Generally, early termination of supervised release is not granted unless there are significant medical concerns, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release. Johnson does not identify any such circumstances in his motion and is instead seeking early termination of his supervision simply for complying with the conditions imposed by the court. Thus, although Johnson appears to be on the right path, the court believes that completion of his full term of supervised release appropriately reflects the seriousness of his offense of conviction, deters future criminal conduct, and provides needed structure for his continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4. The court, likewise, is of the opinion that Johnson's current sentence, including the four-year term of supervised release, was appropriate

at the time of sentencing and remains so. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021).

Probation's report confirms that Johnson has maintained compliance with his conditions of supervised release. The report further verifies that Johnson is married and lives a very "prosocial" life, noting that the couple purchased a home in 2023. He is currently being supervised as a Post-Conviction Risk Assessment Level of Low-Moderate/Violence Category 1. Nevertheless, Probation still recommends that his supervised release be continued at this time. In the report, Probation observes:

> Though Mr. Johnson is to be commended for his apparent success thus far on supervision, the U.S. Probation Office concurs with the U.S. Attorney's Office, and it is believed that continuing the term of supervised release would be in the best interest of the community. The presentence report indicates Mr. Johnson's prior criminal history dates back to age 14 and includes various crimes. Most notably as an adult, he was previously convicted of the lesser included felony offense of Aggravated Assault with Serious Bodily Injury, in Jefferson County, Texas, for which he received a 5 year prison sentence. The U.S. Probation Office does not recommend early termination of supervised release for individuals with a confirmed history of violence. As such, the U.S. Probation Office respectfully suggests the motion should be denied at this time. Mr. Johnson will be encouraged to continue progressing towards his goals while on supervision.

The court concurs with Probation's assessment of the situation and finds that early termination of Johnson's four-year term of supervised release would not be in the interest of justice.

III.   Conclusion

In accordance with the foregoing, Johnson's *Pro Se* Motion for Early Termination of Supervised Release (#198) is DENIED.

SIGNED at Beaumont, Texas, this 7th day of April, 2025.

                                                            MARCIA A. CRONE
                                        UNITED STATES DISTRICT JUDGE